J-S14016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF M.J. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.J., MOTHER | No. 1372 MDA 2015 |

Appeal from the Order Entered July 13, 2015
in the Court of Common Pleas of Cumberland County
Orphans' Court Division, at No(s): 59 Adoptions 2014

| | |
|---|---|
| IN RE: ADOPTION OF E.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.J., MOTHER | No. 1374 MDA 1015 |

Appeal from the Order Entered July 13, 2015
in the Court of Common Pleas of Cumberland County
Orphans' Court Division, at No(s): 68-Adoptions-2014

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, J.                    **FILED MAY 13, 2016**

---

* Former Justice specially assigned to the Superior Court.

C.J. ("Mother") appeals from the orders entered on July 10, 2015, in the Court of Common Pleas of Cumberland County, which involuntarily terminated her parental rights to her minor daughter, M.J., born in July 2006, and to her minor son, E.S., born in November 2010, ("Children"). We affirm.

The trial court summarized the relevant facts and procedural history as follows. Mother is the biological mother of both M.J. and E.S. M.J.'s biological father, S.J., was incarcerated and unreachable in Texas at the time of the May 6, 2015 hearing. E.S.'s biological father, L.S., has helped to support Mother, financially and otherwise, and has helped in raising M.J., E.S. and Mother's other children.

Cumberland County Children and Youth Services ("CYS") became involved with the family due to their experiencing financial difficulties resulting in homelessness. Because of parents' homelessness, the trial court found Children dependent and placed them into foster care with B.J.A. and B.A. on September 24, 2012. At the foster home, Children reside with four other children. Testimony showed that M.J. and E.S. get along with the foster parents' other children. Testimony also showed that M.J. and E.S. have been provided with structure and stability in their foster home, and that M.J. is doing well in school while E.S. has been adjusting to a head start program. B.A., the foster father, testified as to foster parents' intent to adopt Children if given the opportunity.

A permanency plan was set up for Mother to work toward the goal of reunification with Children. The primary goal for Mother was to obtain and maintain stable housing and to be financially secure. CYS also included other goals such as cooperate with CYS, follow rules of home and community, meet medical and dental needs, and improve parenting skills.

Mother's goal of cooperation with CYS has been a problem from the beginning until the time of the May 6, 2015 hearing. Testimony was presented that it is very difficult for CYS to get in touch with Mother since her phone number changes frequently and, even when CYS has the proper phone number, Mother does not always have minutes on her phone. When CYS has attempted to reach Mother by other means, Mother has been unreachable and uncooperative. CYS employees have sent letters to Mother requesting her to call CYS, but Mother has not done so. When CYS visited Mother at the residence, Mother did not answer the door, even though the employees heard voices or the television on inside the home. Mother has refused to participate in a bonding evaluation between themselves and Children.

At the time of the termination hearing, Mother had met her goal of obtaining and maintaining stable housing. Mother maintained the same residence for 15 months. Testimony was provided at the hearing showing that Mother is currently up-to-date on her rent payments. Mother has not

always maintained suitable housing and, at times, has been unable to pay the rent.

Mother has failed to meet her goal of following the rules of home and community. Since January 2015, Mother has been incarcerated three times, including at the time of the May 6, 2015 hearing. Mother has been incarcerated for the failure to pay child support and failure to pay criminal fines.

Mother has also not met the goal of meeting medical and dental needs of Children. Mother has only attended one dental appointment for E.S. since Children's placement with the foster parents in September 2012. Mother has taken the position that it was the foster parents' responsibility to attend the appointments. In addition, Mother has failed to adequately meet her own mental needs. Mother's therapist testified that Mother was discharged from her practice because of her unavailability. Mother admitted that she stopped her therapy, but stated that she did so because of her decision that it was unnecessary. Mother has continued to take her prescribed medicines and has continued to attend her medication management appointments.

Mother was also to improve her parenting skills. While Mother has made some progress toward this goal in the past, the court found that she has not met the goal, and has regressed. Testimony was provided to show that parenting SKILLS through the provider ABC was offered to Mother, and that she was making some progress at SKILLS in the fall of 2014, having

missed only one out of the twenty-nine total appointments. However, since January 2015, Mother has missed seven out of thirteen sessions, resulting in her dismissal from the program in April 2015. Mother also refused to participate in a bonding evaluation, despite attempts by CYS to explain the process and how it might be helpful to Mother's case.

Mother's final goal was to obtain financial stability, as Mother has not consistently been able to be financially secure. Mother has been able to pay her bills for a brief period, but then is incarcerated because of her failure to pay criminal fines. Mother presently does not work; CYS reported that Mother has had only two brief part-time jobs. Mother relies completely on L.S. to work long hours in order to support Mother and their family. However, Mother and L.S. both have significant court-ordered financial obligations, which they rely on L.S. to pay. As Mother is not married to L.S., he is under no obligation to continue supporting any child other than E.S. The goal has not been met.

On August 12, 2014, CYS filed a Petition for Involuntary Termination of Mother's Parental Rights to Children. The trial court held hearings on September 3, 2014, January 14, 2015, and May 6, 2015. By orders entered on July 13, 2015, the trial court involuntarily terminated Mother's parental rights to the Children pursuant to section 2511(a)(2), (5), (8), and (b).

Mother timely filed her notices of appeal. This Court *sua sponte* consolidated the cases at docket numbers 1372 MDA 2015 and 1374 MDA

2015 on September 17, 2015, and listed consecutively with L.S.'s appeal at

Docket No. 1373 MDA 2015.

Mother raises three issues on appeal:

1.      Did the [t]rial [c]ourt err in determining that Cumberland County Children and Youth Services presented evidence so clear, direct, and convincing as to enable the fact finder to come to a clear conviction without hesitancy of the truth of the precise facts in issue?

2.      Did the [t]rial [c]ourt err in determining the best interest of the [C]hildren would be served by terminating the parental rights of the biological mother?

3.      Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining the best interest of the [C]hildren would be served by terminating the parental rights of Mother, when the evidence indicated that the original reasons for placement of the child would no longer exist or had been substantially eliminated?

Mother's Brief at 4.

We review the appeal from the termination of parental rights in accordance with the following standard.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Clear and convincing evidence is testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id*. (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

We may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Mother's parental rights under, among other subsections, subsections (a)(2) and (b), of § 2511 which provides as follows:

 **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

To satisfy the requirements of subsection (a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection (b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

With the above standard of review in mind, we have thoroughly reviewed the record, briefs, and the applicable law, and determined that the evidence presented is sufficient to support the trial court's orders terminating Mother's parental rights to the Children pursuant to § 2511(a)(2) and (b).

Our reading of the trial court's opinion reveals that the trial court carefully and methodically reviewed the evidence and ably addressed Mother's issues presented on appeal. Thus, we affirm the trial court's orders based on the concise, thoughtful, and well-written opinion of the Honorable Christylee L. Peck.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2016

IN THE ADOPTION OF     : IN THE COURT OF COMMON PLEAS OF
M.J.                        : CUMBERLAND COUNTY, PENNSYLVANIA
DOB: 7/11/2006       : ORPHANS COURT DIVISION
                               :
                               : No. 59 ADOPTIONS 2014

IN THE ADOPTION OF     : IN THE COURT OF COMMON PLEAS OF
E.S.                         : CUMBERLAND COUNTY, PENNSYLVANIA
DOB: 11/1/2010       : ORPHANS COURT DIVISION
                               :
                               : No. 68 ADOPTIONS 2014

## IN RE: OPINION PURSUANT TO PA.R.A.P. 1925

Peck, J., September 25, 2015.–

    Appellant C███ J██████ (hereinafter "Mother") is the biological mother of M.J. (d.o.b. 7/11/06) and E.S. (d.o.b. 11/1/10) (collectively, the "Children"). On August 14, 2014, Cumberland County Children and Youth Services (hereinafter "CYS") filed a Petition for Involuntary Termination of Parental Rights of C███ J██████ Under Section 2512 of the Adoption Act (hereinafter the "Petitions for Involuntary Termination" or the "Petitions") in each of the above-docketed cases to terminate Mother's parental rights as to both Children. CYS listed 23 Pa.C.S. § 2511(a)(2), (a)(5), (a)(8), and (b) as the statutory grounds for termination. Joseph Hitchings, Esquire was appointed to represent Mother,[1] and a hearing was held on this matter on May 6, 2015. The matter was taken under advisement,[2] and on July 10, 2015, this Court granted the Petitions for Involuntary Termination in each of the above-captioned matters, thus terminating Mother's parental rights as to both Children. On August 10, 2015, Mother filed a Notice of Appeal and identical Statements of Errors Complained of on Appeal in each case, alleging the following errors:

    1. The Honorable Court erred as a matter of law and abused its discretion in changing the goal for this child to adoption and terminating Appellant's

---

[1] Order of the Court, August 15, 2014.
[2] Order of the Court, May 6, 2015.

1

parental rights in that Appellant is able to provide the children with essential parental care, control, and subsistence.

2. The Honorable Court erred as a matter of law and abused its discretion in terminating Appellant's parental rights when the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated.

3. The Honorable Court erred as a matter of law in determining the best interest of the child would be served by terminating Appellant's parental rights.

Pursuant to Pa.R.A.P. 1925(a), this Opinion is written in support of this Court's decision to terminate Mother's parental rights.

## FACTUAL AND PROCEDURAL HISTORY

C████J██████ is the biological mother of M.J. and E.S..[3] Mother currently resides with L████S████ (hereinafter "Short"), E.S.'s biological father.[4] M.J.'s biological father, S████J██████, was incarcerated and unreachable in Texas at the time of the May 6 hearing.[5] Despite not being M.J.'s father, S████ has helped to support Mother, financially and otherwise, in raising M.J.,[6] in addition to helping to raise E.S. and Mother's other children.[7] CYS first became involved with the Children's well-being due to the homelessness of Mother and E.S..[8] After CYS became more involved with the Children, it became apparent that homelessness wasn't the only concern, rather CYS was concerned about improper parental care and control.[9] As a result, the Children were first placed in the foster care of B████J█ and B███ A████ (hereinafter the "A████s" or the "A████ family") on September 24, 2012.[10]

---

[3] Notes of Testimony May 6, 2015 (hereinafter "N.T.") at 60.
[4] N.T. at 60.
[5] N.T. at 19-20.
[6] N.T. at 70.
[7] N.T. at 70.
[8] N.T. at 50.
[9] N.T. at 53.
[10] N.T. at 25, 39.

2

At the A█████s, the Children reside with four other children.[11] M.J.'s own testimony was that she and E.S. get along with the A█████'s other children.[12] Testimony was given that M.J. and E.S. have been provided with structure and stability in the A█████ home,[13] and that M.J. is doing well in school while E.S. has slowly been adjusting to the school environment in a head start program.[14] By all accounts, the A█████ family loves the Children, and Mr. A█████ testified as to their intent to adopt the Children if given the opportunity.[15]

After the initial placement of the Children, CYS filed a Permanency Plan for Mother, which included the following goals: (1) Cooperate with CYS; (2) Obtain and Maintain Stable Housing; (3) Follow the Rules of the Home and Community; (4) Meet Medical and Dental Needs; (5) Improve Parenting Skills; and (6) Financial Stability.[16] The Court heard the following testimony regarding Mother's progress towards meeting each of these goals.

In regards to Mother's first goal, cooperation with CYS, this Court heard testimony that Mother's cooperation has been a problem from the beginning until the time of the hearing.[17] Specifically, testimony was given that it is very difficult for CYS to get in touch with Mother, since her phone number changes frequently and, even when CYS has the proper phone number, Mother does not always have minutes on her phone.[18] Furthermore, when CYS has attempted to reach Mother by other means, she has been similarly unreachable & uncooperative. Testimony was given that CYS employees have sent letters to Mother requesting her to call CYS, but she has not done so.[19] When CYS visited Mother at the residence, Mother did not answer the door, even though the

---

[11] N.T. at 55.
[12] N.T. at 10.
[13] N.T. at 25, 41.
[14] N.T. at 41-42.
[15] N.T. at 57.
[16] N.T. at 36, 37, 39, 40; *see also* CYS's Petition for Involuntary Termination, Section G.
[17] N.T. at 36.
[18] N.T. at 36.
[19] N.T. at 36.

employees heard voices or the television on inside the home.[20] Mother and S███ have refused to participate in a "bonding evaluation" of the relationship between themselves and the Children, despite the fact that it was recommended by the Guardian *ad litem* and this Court granted a continuance of the involuntary termination hearing scheduled for January 14, 2015 in order for such an evaluation to be conducted.[21]

At the time of the termination hearing, Mother had met her goal of obtaining and maintaining stable housing.[22] Mother and L███ S███ have maintained the same residence for 15 months,[23] and testimony was given that Mother and S███ are up-to-date on their rent payments and have been paying the same on time.[24] However, Mother has not always maintained suitable housing and has at times been unable to pay the rent.

Mother has failed to meet her goal of following the rules of the home and community. Since January of 2015, Mother has been incarcerated three times,[25] including at the time of the May 6, 2015 hearing.[26] Mother noted, however, that she has not been incarcerated on new charges, but instead has been incarcerated for the failure to pay child support and failure to pay criminal fines.[27]

Likewise, Mother has not met the goal of meeting medical and dental needs. Mother has attended only a single appointment, a dental appointment for E.S., since the Children's placement with the Amsleys in September of 2012.[28] Instead of attending appointments, Mother has taken the position that this is now the Amsley's responsibility.[29] Additionally, Mother has failed to adequately meet her own mental health needs. Mother's therapist testified that Mother was discharged from the practice because of her unavailability.[30] Mother admitted to stopping therapy, and stated that she

---

[20] N.T. at 36.
[21] N.T. at 28.
[22] N.T. at 37.
[23] N.T. at 65.
[24] N.T. at 37.
[25] N.T. at 37.
[26] N.T. at 37.
[27] N.T. at 37-38, 60.
[28] N.T. at 39.
[29] N.T. at 39.
[30] N.T. at 21.

4

did so based on her own decision that she was fine without it.[31] Mother has, however, continued to take her prescribed medicines, and has, for the most part, continued to attend her medication management appointments.[32] Mother's instability in life appears to be caused, at least in part, due to her mental health issues. This Court is concerned that Mother does not follow through with necessary steps to secure her mental health.

The next goal which the Service Plan established for Mother was to improve parenting skills. While Mother has made some progress toward this goal in the past, she has not met this goal, and has regressed in this respect. Testimony was given that parenting SKILLS through the provider ABC was offered to Mother, and that she had been making some progress at SKILLS in the fall of 2014, having only missed one out of the twenty-nine total appointments.[33] However, since January of 2015, Mother has missed seven out of thirteen sessions (one due to snow, and six no-shows), resulting in her dismissal from the program in April of 2015.[34] Furthermore, Mother has been attending STEPS visitation with the Children regularly, although she has brought another one of her children, ██████, to the sessions, despite the fact that ██████ and E.S. do not get along.[35] Mother was specifically asked not to bring ██████ to the sessions, but she did so anyway, which once resulted in a cancelled session.[36] Finally, as discussed above, Mother has refused to participate in a bonding evaluation, despite several attempts by CYS to explain the process and how it might be helpful to her case.[37]

The final goal which was set for Mother was to obtain financial stability. Mother has not consistently been able to be financially secure. She has at times been able to pay her bills for a brief period of time, but then finds herself jailed as a result of failure to pay criminal fines. Mother presently does not work, and CYS reported that Mother has had

---

[31] N.T. at 61.
[32] N.T. at 62.
[33] N.T. at 31.
[34] N.T. at 27.
[35] N.T. at 27.
[36] N.T. at 27.
[37] N.T. at 29, 48.

5

only two very brief part-time jobs in the time that she has been in touch with CYS.[38] Mother presently relies completely on S▮▮▮ to work long hours in order to support Mother and their family.[39] This arrangement has allowed Mother to maintain some degree of financial stability over the past year,[40] however, Mother and S▮▮▮ both have significant court-ordered financial obligations, which they also rely on S▮▮▮ to pay.[41] The repeated failure to meet these court-ordered financial obligations has resulted in Mother's incarceration three times since January of 2015.[42] As Mother is not married to S▮▮▮,[43] he is under no obligation to continue supporting any child other than his own should he and Mother separate. Therefore, although Mother has achieved some modicum of financial stability, this goal has not been met.

As a result of Mother's failure to meet the goals outlined in the Permanency Plan, as well as the A▮▮▮y family presenting itself as an adoptive resource, CYS filed the Petitions for Involuntary Termination. This Court granted the Petitions for Involuntary Termination, thus terminating Mother's parental rights as to both Children as of July 10, 2015. This appeal followed.

## DISCUSSION

Under Pennsylvania's jurisprudence, a trial court must conduct a two-pronged analysis under 23 Pa.C.S. § 2511 when deciding whether to involuntarily terminate the parental rights of a natural parent. *See In re I.G.*, 939 A.2d 950, 952 (Pa. Super. 2007). First, a court must determine whether appropriate grounds for involuntary termination of parental rights exist under § 2511(a). *Id.* If grounds exist under section (a), then the court must determine whether the termination of parental rights is in the best interest of the children under § 2511(b). *Id.* Under section (a), the focus is on the parent's conduct, while under section (b), the focus is on the needs of the child. *Id.* at 956. It is well

---

[38] N.T. at 32.

[39] N.T. at 40, 69-70.

[40] N.T. at 65.

[41] N.T. at 69.

[42] N.T. at 37.

[43] N.T. at 50-51.

6

established that a party seeking termination of parental rights bears the burden of establishing, by clear and convincing evidence, that grounds for involuntary termination exist. *Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

In the present case, the Petitions for Involuntary Termination filed by CYS sought to terminate Mother's parental rights under several provisions of Section 2511(a) of the Adoption Act. The particular subsections of the Act relied upon by CYS provide as follows:

> (a) General Rule – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ...
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ...
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> ...
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(2),(5), and (8). Although CYS listed multiple subsections as its grounds for involuntary termination, it only needed to prove that grounds for termination existed under any one of the subsections. *In re: L.S.G.*, 767 A.2d 587, 590-91 (Pa. Super. 2001).

As set forth more fully below, This Court found clear and convincing evidence to support involuntary termination under each of the above-listed sections. The Court also found that termination of Mother's rights was in the best interest of the children under § 2511(b).

**Involuntary Termination under 23 Pa. C.S. §2511(a)(2)**

Under § 2511(a)(2), This Court found clear and convincing evidence that the repeated incapacity, neglect, and refusal of Mother has caused the Children to be without essential parental care, and that the conditions causing the same cannot or will not be remedied by Mother. As the Superior Court has noted,

> The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties. Nevertheless, *parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities.* A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of resources, may properly be rejected as untimely or disingenuous.

*In re of K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008)(emphasis added). Additionally,

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. *These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.*
>
> ...
>
> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. *Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.*

*In re B., N.M.*, 856 A.2d 847 (Pa. Super. 2004)(internal citations omitted)(emphasis added).

8

In the present case, this Court found that Mother has not made a diligent effort to assume full parental responsibilities. Mother has failed to utilize all of the resources provided to help make her a better parent and to help support a parent-child relationship. Furthermore, this Court did not find that Mother is capable of remedying the incapacity, neglect and refusal in order to provide care for the Children in the immediate future.

At the time that the Children were originally adjudicated as dependent, Mother received a Permanency Plan, which contained many goals designed to make Mother a better parent and to reunite her with the Children. Undoubtedly, meeting the goals outlined in the Permanency Plan would require significant life changes on Mother's behalf, but life changes were necessary for Mother in order for her to be an effective parent. Over two and a half years have now passed since the Children were first placed in the foster care of the A█████s, and Mother has met only one of her six goals. Her progress toward meeting the other five goals has been minimal. While Mother tries to do better at times, she is inconsistent in her efforts and fails to use CYS's help.

When Mother had the opportunity to better herself as a parent by attending the recommended mental health counseling, she unilaterally decided that therapy was no longer necessary. Mother stopped attending counseling sessions and became unreachable by her therapist, eventually resulting in her dismissal from the practice.[44] Likewise, when CYS offered Mother SKILLS sessions to help her become a better parent, she repeatedly did not show up for scheduled sessions and was dismissed from the program in April of 2015. CYS employees who have worked on this matter similarly report that Mother is frequently unreachable and sometimes uncooperative. Mother has refused to take an active role in meeting the medical and dental needs of the Children during the two and a half years that they have been in foster care, instead taking the position that such concerns are no longer her responsibility since the Children are in foster care. When Mother had the opportunity to cooperate with the Guardian *ad litem*'s recommendation for a bonding evaluation between herself and the Children, she refused to participate,

---

[44] N.T. at 21.

9

despite having the purpose of the evaluation explained to her, as well as the fact that the evaluation could be beneficial to her interests.

Mother's actions demonstrate that she unfortunately is incapable, on a consistent basis, to be proactive in remedying the incapacity, neglect and refusal which led to the placement of the Children in foster care. Mother has not taken the "necessary steps to support a parent-child relationship" on an on-going basis. *In re E.A.P.*, 944 A.2d 79, 83 (Pa. Super. 2008). After giving Mother a significant amount of time to meet these goals and better herself as a person and parent, and Mother having repeatedly put up obstacles to CYS's aid, and Mother having failed to make consistent progress in her mental health, finances, and other goals, this Court found that grounds for involuntary termination of Mother's parental rights existed under Section 2511(a)(2).

## Involuntary Termination under 23 Pa. C.S. §2511(a)(5)

Alternatively, under § 2511(a)(5), this Court found clear and convincing evidence supporting involuntary termination. The Pennsylvania Superior Court has established the following standards for terminating parental rights under subsection (a)(5):

> In order for termination pursuant to Section 2511(a)(5) to be proper, the following must be demonstrated: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re A.S.*, 11 A.3d 473, 482 (Pa. Super. 2010)(internal citations omitted).

In the present case, the Children were taken out of the custody of Mother and placed in foster care on September 24, 2012, due to concerns about homelessness and improper parental care and control. Thus, the children have been out of Mother's custody much longer than the six months required by Section 2511(a)(5).

For the same reasons discussed above, including Mother's unavailability, Mother's repeated incarceration for failure to pay court-ordered financial obligations,

10

Mother's dismissal from therapy, Mother's dismissal from SKILLS, and Mother's refusal to take an active role in the Children's medical and dental health, this Court found that the concerns regarding Mother's ability to provide essential parental care and control continue to be at issue in the present. Additionally, this Court found that Mother is not able to remedy those concerns within a reasonable time. Mother has had two and a half years to change her lifestyle and make progress toward the goals in her Permanency Plan, but has not done so.

Further, the services offered to Mother by CYS are unlikely to remedy the concerns regarding Mother's ability to provide parental care and control. CYS has offered a wide variety of helpful services, but it is incumbent upon Mother to take advantage of those services. Mother has been unavailable and uncooperative when CYS has attempted to reach Mother at her home. Mother was discharged from SKILLS for her repeated failure to show up to scheduled sessions. Mother was unwilling to undergo a bonding evaluation. Therefore, this Court does not believe that the services offered by CYS will remedy the conditions which led to the Children's removal within a reasonable period of time.

Finally, this Court believes that terminating Mother's parental rights would best serve the needs and welfare of the Children. The Children are in need of a loving and stable environment in which to grow. The A████s have provided such an environment, while Mother has not proven that she can provide the same. Therefore, this Court found that sufficient grounds existed to terminate Mother's parental rights under § 2511(a)(5).

### Involuntary Termination under 23 Pa. C.S. §2511(a)(8)

Under 23 Pa. C.S. § 2511(a)(8), This Court found by clear and convincing evidence that the Children have been removed from Mother's custody for longer than twelve months, that the conditions which led to their removal still exist, and that termination will best serve the needs and welfare of the children. As the Superior Court has noted,

> Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to

11

exist, despite the reasonable good faith efforts of DHS supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of DHS services.

*In re of K.Z.S.*, 946 A.2d at 758 (internal citations omitted).

The Children have been living in a foster home for over two and a half years, which meets the twelve-month temporal requirement of Section 2511(a)(8). Furthermore, as set forth more fully above, this Court found that concerns still exist regarding Mother's ability to provide the Children with necessary parental care and control. Additionally, this Court found that involuntary termination of Mother's parental rights best serves the needs and welfare of the Children given the loving and stable environment provided to the Children by the A████ family. Therefore, this Court found that sufficient grounds existed to terminate Mother's parental rights under Section 2511(a)(8).

### Best Interest of the Children under 23 Pa. C.S. §2511(b)

Unlike the analysis a court conducts under § 2511(a), the analysis under § 2511(b) focuses on the interests of the children. This analysis includes "weighing the needs and welfare of the child, as well as an examination of the emotional bond between parent and child... which 'encompasses intangibles such as love, comfort, security, and stability.'" *In re I.G.*, 939 A.2d at 956 (citing *In re D.W.*, 856 A.2d 1231, 1234 (Pa Super. 2004); quoting *In re Adoption of R.J. S.*, 901 A.2d 502, 514 (Pa. Super. 2006)).

In the present case, it is apparent to the Court that Mother loves the Children, but, as noted above, analysis under Section 2511(b) focuses on the Children, not the parents. By virtue of its conversations with M.J., it is apparent to this Court that M.J. does care about her Mother. M.J., however, expressed significant concerns regarding spending even limited unsupervised time with Mother, and requested that all future visits would be supervised.[45] E.S. was placed into foster care before his second birthday. E.S.'s placement into foster care at such a young age has rendered a very limited bond with Mother. Mother had an opportunity to prove the strength of the bond between herself and

---

[45] N.T. at 13-14.

12

the Children by participating in the bonding evaluation, but she refused to take part. The A████ did, however, take part in the bonding evaluation which showed that a bond exists between the Children and the A██████. As such, this Court found that while a volatile emotional bond exists between M.J. and Mother, and a very limited one may be present between E.S. and Mother, the bond is not so strong as to render termination of Mother's parental rights unwise.

Concerning the mental and physical needs of the Children, this Court found that the Children have a great need for stability and permanency in their lives. Both Children have now been living in the A████'s home for more than two and a half years. The evidence showed that the A████ have provided a safe, stable, and loving environment for the Children, and that a bond exists between the Children and the A████ family. Furthermore, the A████ plan to adopt the Children if given the opportunity. This Court believes that adoption by the A████ would provide the stability that these children desperately need in their lives. In contrast, as noted above, Mother has continually faced stability problems with both income and incarceration, and this Court does not believe those issues will be resolved any time soon. Thus, the A████ family can provide the Children with the stability and permanence that they need, whereas Mother cannot.

Therefore, this Court found that involuntary termination of Mother's parental rights is in the best interest of the Children under Section 2511(b).

## CONCLUSION

In summary, this Court found clear and convincing evidence to support termination of Mother's parental rights under 23 Pa. C.S. § 2511(a)(2),(5), and (8) based on Mother's continual failure to cooperate with CYS and her failure to make progress toward the goals established in her Permanency Plan. Furthermore, this Court found that termination of Mother's parental rights under § 2511(b) is in the best interest of the

13

children because Mother is unable to provide the stable environment that the Children need.

BY THE COURT,

_Christylee L. Peck_

Christylee L. Peck,    J.

Lindsay D. Baird, Esq.
Attorney for CCC&YS

Cindy Villanella, Esq.
Guardian Ad Litem

Joseph Hitchings, Esq.
Attorney for Mother

Sheri Coover, Esq.
Attorney for Legal Father

Kathleen Shaulis, Esq.
Attorney for Lonnie Short

Michael Whare, Esq.
Attorney for Alleged Father

Bret P. Shaffer, Esq.
Attorney for Foster Parents

CCC&YS

CASA

:rc

14